UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DALE S.,

           Plaintiff,

   v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

           Defendant.

No. 1:21-cv-02567

OPINION

---

**APPEARANCES**:

Alan H. Polonsky
POLONSKY & POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106

   *On behalf of Plaintiff.*

Rachel A. Honig
Acting United States Attorney
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Emily Breslin Markos
Mark J. Dorval
SOCIAL SECURITY ADMINISTRATION
   OFFICE OF THE REGIONAL CHIEF COUNSEL
300 Spring Garden Street
Sixth Floor
Philadelphia, PA 19123

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff Dale S.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (Compl., ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **VACATES** the Acting Commissioner's decision and **REMANDS** this case to the agency for further administrative proceedings.

I.     **BACKGROUND**

The Court recites herein only those facts necessary for its determination of this Appeal.

**A. Administrative History**

On February 6, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 28, 2017. (AR 10). The claim was denied initially on April 15, 2019, and upon reconsideration on July 2, 2019. (AR 10). Plaintiff filed a request for a hearing on July 23, 2019. (AR 10). Plaintiff appeared for a telephone hearing due to restrictions related to the COVID-19 pandemic on June 9, 2020, accompanied by counsel. (AR 10). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated June 19, 2020. (AR 7). The Appeals Council denied his request for review on December 16, 2020. (AR 1). This Appeal followed. (Complaint, ECF No. 1).

**B. Plaintiff's Background and Testimony**

Plaintiff is a fifty-year-old man who lives with his wife and two adult children in Southern New Jersey. (AR 16, 33, 39). He has a high school education and can communicate in English.

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by his first name and last initial.

(AR 16, 153). He alleges that he became disabled on August 28, 2017, after a workplace injury. (AR 33). Plaintiff and his former employer settled his worker's compensation claim based on that injury in June 2019, from which Plaintiff continues to receive a monthly check. (AR 33–34, 138–143).

In his initial claim, Plaintiff complained of suffering from back and neck injuries. (AR 51–52). At his administrative hearing, Plaintiff explained that one day while working as truck driver and tire deliveryman, his "back popped and brought [him] to [his] knees," and that he had been out of work ever since. (AR 33). Plaintiff explained that he could not return to work—even in a less challenging position—because he "can't sit or stand for long periods of time whatsoever," meaning periods "[l]onger than an hour." (AR 34). Plaintiff made clear that he would "gladly go back to work but [his] back just isn't allowing it." (AR 34). Plaintiff further explained that, because of his injuries, he cannot bend down to tie his shoes, he cannot mow his lawn in fewer than two or three days, and he cannot feel anything in his left thigh after a recent fall. (AR 34).

In response to questioning by counsel, Plaintiff shared that since his initial injury, he had gained weight, reaching as much as 400 pounds. (AR 35). He also explained that he often relied on the use of a cane when walking to keep his balance. (AR 35–36). Without it, he estimated that he could walk about halfway down the hallway in his house to the bathroom, but no further. (AR 36). He and his wife have considered selling their home because he has difficulty navigating stairs. (AR 35). Plaintiff explained that he also struggles while grocery shopping because items like a "case of water" are too heavy for him to handle. (AR 41). He cannot lift anything over twenty pounds. (AR 37).

Plaintiff acknowledged that he was not presently receiving any treatment for his neck or back, and the only medication he routinely takes related to those injuries was a muscle relaxer to

help him sleep—which he often struggles to do—and Tylenol. (AR 38, 42). He had previously received facet injections and nerve ablations, but these procedures never provided more than temporary relief. (AR 39). His doctors have not recommended any further surgeries, but he would consider undergoing them if they did. (AR 39).

### C. Medical History

Plaintiff has been examined by numerous medical professionals over the course of the last five years and throughout the pendency of his disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1. Rehab Excellence Center

Plaintiff received several weeks of physical therapy from the Rehab Excellence Center in Turnersville, New Jersey, in the months following his workplace injury. (AR 262–309). His physical therapists consistently noted that his potential for rehabilitation was "[g]ood" and that he had no contraindications to therapy. (AR 268–69, 271, 273, 275, 277, 281–82, 284, 286, 288, 290, 294–95, 297, 299, 301, 303, 307–08). They, along with Plaintiff, set a goal of returning to work full-time within four weeks. (*Id.*). Plaintiff obviously did not achieve this goal. (AR 33).

#### 2. Coastal Spine

Plaintiff also received care after his workplace injury from Coastal Spine in Pine Hill, New Jersey, from roughly October 2017 through June 2018. (AR 310–57). His progress notes consistently indicate a normal gait pattern and full strength in his upper and lower limbs. (AR 313–14, 316–17, 322–24, 329, 337, 342–43, 348–49, 356–57). Doctors recommended "lifting restrictions of less than 20 pounds with pushing and pulling no greater than 40 pounds" at first, and later adjusted these restrictions to "no greater than 25 pounds of lifting." (AR 314, 317). Doctors ultimately recommended injection therapy for pain management. (AR 356).

### 3. Advocare Berlin Medical Associates and Christopher Colopinto, D.O.

Plaintiff's primary care provider is Christopher Colopinto, D.O., at Advocare Berlin Medical Associates in Berlin, New Jersey. Plaintiff began seeing Dr. Colopinto at least as early as July 2017, before his workplace injury. (AR 358–408, 419–37). Dr. Colopinto has treated Plaintiff for a variety of ailments over the years but is not a pain management specialist. (AR 366–69). He diagnosed Plaintiff as morbidly obese and consistently recommended that Plaintiff lose weight through diet changes and regular exercise. (AR 369, 374 385, 429). At no point has Dr. Colopinto suggested that Plaintiff's obesity requires any additional work or lifestyle restrictions. Notwithstanding this, in May 2020, Dr. Colopinto wrote a letter summarizing Plaintiff's medical history and suggesting that Plaintiff is "totally and permanently disabled." (AR 436). Dr. Colopinto wrote that he expects Plaintiff's "conditions will only progress and deteriorate as he ages" and that he feels that Plaintiff could not be "gainfully employed at any time in the future." (AR 436).

### 4. Samuel Sarmiento, M.D.

Plaintiff was evaluated by Samuel Sarmiento, M.D., in April 2019 at the request of the State of New Jersey Division of Disability Determination Services. (AR 408). Dr. Sarmiento observed that Plaintiff was "in no acute distress" and found that both his upper and lower extremities exhibited full strength, although he noted decreased sensation in Plaintiff's left leg. (AR 412). He also found that Plaintiff "walked with a normal physiologic gait." (AR 413).

### 5. Mohamed Abbasi, M.D., and Nancy Simpkins, M.D.

Plaintiff was examined by Mohamed Abbasi, M.D., as part of his initial disability determination. (AR 51). Dr. Abbasi concluded that Plaintiff suffers from neck and back pain, and has radiculopathy of both arms, but that Plaintiff could still engage in light work so long as he need not lift or carry more than twenty pounds occasionally or ten pounds consistently. (AR 56).

Dr. Abbasi's conclusions were reviewed for reconsideration by Nancy Simpkins, M.D. (AR 61–70). Dr. Simpkins came to the same conclusions as Dr. Abbasi. (AR 66–68).

### D. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on June 19, 2020. *See* 20 C.F.R. § 404.1520(a)(4) (2021). First, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of August 28, 2017. (AR 12). Second, the ALJ determined that Plaintiff had several severe impairments, including degenerative disc disease, status-post anterior cervical discectomy and anterior total disc replacement, as well as obesity. (AR 12). The ALJ noted that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. (AR 12–13).[2]

Relying on all of the available relevant evidence, the ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 404.1567(b).[3] (AR 13–16). Accordingly, relying on the testimony of a vocational expert, the ALJ

---

[2] In what appears to be a critical typographical error, the ALJ wrote, "The undersigned finds that the claimant's obesity causes any effect on other body systems as to meet or medically equal another listing." (AR 13). However, given her ultimate step-three conclusion that Plaintiff's conditions do not meet or equal any of the listed impairments, the Court assumes that the ALJ meant that Plaintiff's obesity does *not* "cause[] any effect on other body systems[.]" (AR 13). Still, as discussed more fully below, this error, among others, makes remand appropriate in this case to ensure Plaintiff's obesity is fully and properly considered.

[3] Specifically, the regulation provides in relevant part—

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. 404.1567(b) (2022).

found that Plaintiff could no longer perform any of his past relevant work. (AR 16). However, the ALJ further found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (AR 17). Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act since his alleged onset date. (AR 17).

## II. LEGAL STANDARD

When reviewing a final decision of an ALJ regarding a claimant's disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). That analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

### III. DISCUSSION

In his Appeal, Plaintiff argues, among other things, that the ALJ erred in her finding that Plaintiff's RFC allowed for his continued employment in a job requiring only light work because

8

she did not adequately consider the effects of his obesity, which she found to be a severe impairment at step two. (ECF No. 8 at 14–19). The Court agrees.[4]

Obesity has not itself been a "listed impairment" for decades, but the condition remains a potential cause of disability. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00-3p, 2000 WL 574779 (May 15, 2000)). The Social Security Administration's most recent articulation of how obesity is to be considered in the course of its analysis of disability claims is Social Security Ruling ("SSR") 19-2p. 2019 WL 2374244 (May 20, 2019).

SSR 19-2p provides that obesity can be a "severe impairment" that allows a disability claim to survive analysis at step two: "If the [claimant]'s obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe." *Id.* at *3. At step three as well, "[o]besity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing." *Id.* at *4. And further, with respect to assessing a claimant's RFC, the regulation provides—

> We must consider the limiting effects of obesity when assessing a person's RFC. RFC is the most an adult can do despite his or her limitation(s). **As with any other impairment, we will explain how we reached our conclusion on whether obesity causes any limitations.**
>
> A person may have limitations in any of the exertional functions, which are sitting, standing, walking, **lifting, carrying, pushing, and pulling.** . . . . Obesity increases stress on weight-bearing joints and **may contribute to limitation of the range of motion of the skeletal spine and extremities.** . . . .
>
> We assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. People with an MDI of obesity may have limitations in the ability to sustain a function over time. . . . .
>
> **The combined effects of obesity with another impairment(s) may be greater**

---

[4] Although Plaintiff asserts a number of other errors in the Commissioner's decision, because the Court concludes that this matter should be remanded for further consideration of Plaintiff's obesity, the Court does not reach and offers no opinion regarding those other claims.

9

> **than the effects of each of the impairments considered separately. . . . . We consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments.**

*Id.* (footnote omitted and emphasis added). Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504 (interpreting earlier but substantially similar regulations). "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), and again interpreting earlier but substantially similar regulations).

Here, the meaningful consideration of Plaintiff's obesity with respect to (at least) the ALJ's determination of his RFC as required by SSR 19-2p is missing. Although the ALJ briefly discusses Plaintiff's height and weight at the time of his injury and his application, and notes that his doctor has encouraged him to lose weight through diet and exercise, (AR 15), she fails to describe with any specificity what, if any, effect this condition has on Plaintiff's ability to continue to work. In fact, the Plaintiff's obesity is not mentioned anywhere in the ALJ's decision after finding it to be a severe impairment in step two, other than the conclusory statement in step four and a factual statement as to his weight at various times in step five. (AR 12–18). There is simply no analysis whatsoever. The complete absence of such discussion is particularly notable and concerning given that the ALJ found Plaintiff's obesity to be a severe impairment at step two. (AR 12). The answer may be that his obesity has no effect at all on his RFC, or perhaps Plaintiff has failed to meet his burden of providing objective medical evidence that it does, as the end of the ALJ's RFC analysis might suggest. (AR 15–16). But the fact that the Court is left guessing shows that the ALJ has

failed to "explain how [sh]e reached [he]r conclusion on whether obesity causes any limitations," as required by SSR 19-2p. Accordingly, the Court concludes that this failure was error. *Marie R. v. Kijakazi*, No. 20-06612, 2022 WL 279851, at *6 (D.N.J. Jan. 31, 2022).

Having concluded as much, the Court must also consider whether this error was harmless or one requiring remand. *Cf. Woodson*, 661 F. App'x at 765–66. On this record, the Court cannot conclude that the error was harmless. *Marie R.*, 2022 WL 279851, at *7 (collecting cases remanding denials of Social Security benefits to the agency for insufficient consideration of claimants' obesity). ALJs' decisions must include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Because that development and explanation is lacking here, the Court concludes that remand is most appropriate. "It may well be the case that the ALJ will arrive at the same decision after [s]he properly considers the obesity of Plaintiff. At this juncture, however, the ALJ must set forth [her] consideration of Plaintiff's obesity." *Korcz v. Comm'r of Soc. Sec.*, No. 16-01039, 2017 WL 776104, at *4–5 (D.N.J. Feb. 28, 2017). Remand will allow her to do so.

## CONCLUSION

For the foregoing reasons, the Court **VACATES** the final decision of the Acting Commissioner and **REMANDS** this case to the agency for further administrative proceedings consistent with this Opinion. An appropriate Order will follow.

 */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**